# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN BOUDREAUX** | **CIVIL ACTION** |
| **VERSUS** | **No. 14-1169** |
| **OS RESTAURANT SERVICES, L.L.C. ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendants, OS Restaurant Services, Inc., Outback Steakhouse of Florida, LLC, and OSF Louisiana Services, LTD (collectively, "defendants" or "Outback"), to dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff, Steven Boudreaux, opposes the motion.[3] For the following reasons, the motion is **DENIED**.

## BACKGROUND

The above-captioned matter arises out of plaintiff's termination from an Outback Steakhouse restaurant on or about May 24, 2013.[4] During his tenure with Outback, plaintiff signed an "Employment Agreement" containing a noncompetition clause, which plaintiff asserts is invalid.[5] Plaintiff's first lawsuit against defendants, filed in the 32nd District Court for the

---

[1] R. Doc. No. 17.
[2] *See infra* note 41.
[3] R. Doc. No. 19.
[4] R. Doc. No. 13, ¶¶ 5-35.
[5] R. Doc. No. 13, ¶¶ 19-23. The Employment Agreement states, in pertinent part:
> For a continuous period of two (2) years commencing on termination of the Employee's [Boudreaux's] employment with the Employer [Outback], regardless of any termination pursuant to Section 8 [for cause] or any voluntary termination or resignation by the Employee, the Employee shall not [be employed by or hold an interest in] any steakhouse restaurant . . . that is located or intended to be located anywhere within a radius of thirty (30) miles of any Outback

Parish of Terrebonne, State of Louisiana, on July 8, 2013, and removed to this Court on August 9, 2013, was dismissed pursuant to Rule 12(b)(1) for failure to present a justiciable case or controversy.[6]

The above-captioned case was filed on May 22, 2014.[7] Defendants then filed a Rule 12(b)(6) motion,[8] which the Court conditionally granted on September 30, 2014, subject to plaintiff's option to file an amended complaint.[9] The amended complaint was timely filed on October 10, 2014,[10] and plaintiff alleges two counts: intentional interference with business relations,[11] and unfair trade practices pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA").[12] Defendants now assert that the Court should dismiss both of the amended counts pursuant to Rule 12(b)(6).[13] Accordingly, the Court must now decide, for the third time, whether plaintiff's complaint has stated a plausible claim.

## LAW AND ANALYSIS

### I.      Rule 12(b)(6)

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

---

Steakhouse® restaurant . . . or any proposed Outback Steakhouse® restaurant . . . .
R. Doc. No. 13-2, § 10(b) (emphasis omitted).
[6] *Boudreaux v. OS Restaurant Servs., L.L.C.*, No. 13-5333, 2013 WL 5722714 (E.D. La. Oct. 21, 2013) (Africk, J.).
[7] *See* R. Doc. No. 1. The complaint and the amended complaint allege that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and defendants have not challenged this assertion. *See* R. Doc. No. 1, ¶ 4; R. Doc. No. 13, ¶ 4.
[8] R. Doc. No. 7.
[9] R. Doc. No. 12.
[10] R. Doc. No. 13.
[11] R. Doc. No. 13, ¶¶ 36-40.
[12] R. Doc. No. 13, ¶¶ 41-46.
[13] R. Doc. No. 17.

*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth

Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative
> level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly*
> standard, explaining that "[t]o survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
> plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173
> L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167
> L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded
> facts do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader
> is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine

whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999);

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must

accept all well-pleaded facts as true and liberally construe all factual allegations in the light most

favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242,

247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to

relief.'" *Cutrer v. McMillan*, 308 F. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco

Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## II.    Amended Complaint

Plaintiff's amended complaint begins with the factual background of plaintiff's

employment with Outback and his termination on or about May 24, 2013.[14] Plaintiff alleges that

---

[14] R. Doc. No. 13, ¶¶ 5-15.

he signed a noncompetition agreement with Outback but that such agreement "is invalid and unenforceable insofar as it fails to provide a geographical restriction required by La. Rev. Stat. § 23:921(C)."[15] Plaintiff alleges that after his termination, he sought employment with another steakhouse restaurant, Texas Roadhouse, who "advised Plaintiff that he was well-qualified and would have been offered a position with Texas Roadhouse, but for the existence of the non-competition and non-solicitation provisions in his Employment Agreement with Outback,"[16] prompting plaintiff to consult with counsel.[17]

According to the amended complaint, "[b]ecause Plaintiff's only professional expertise was in the business of casual steakhouse dining, Plaintiff's ability to find a job with compensation commensurate with his previous employment was contingent upon the enforceability of the non-competition provision in the Employment Agreement."[18] Plaintiff alleges that his counsel telephoned Joseph Kadow, defendants' executive,[19] to discuss plaintiff's claims, but that the call was never returned, so plaintiff filed the first lawsuit in state court seeking an injunction and a declaratory judgment regarding the noncompetition agreement.[20] Plaintiff alleges that "[f]ive days after the [state court] Petition was filed," Outback sent plaintiff

[15] R. Doc. No. 13, ¶ 21; *see* R. Doc. No. 13, ¶¶ 19-23. Section 23:921(C) provides, in pertinent part:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer *within a specified parish or parishes, municipality or municipalities*, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

(emphasis added).
[16] R. Doc. No. 13, ¶ 17; *see* R. Doc. No. 13, ¶¶ 16-18.
[17] R. Doc. No. 13, ¶ 24.
[18] R. Doc. No. 13, ¶ 24.
[19] Plaintiff alleges that Mr. Kadow is "Executive Vice President and Chief Legal Officer of Bloomin' Brands." R. Doc. No. 13, ¶ 25.
[20] R. Doc. No. 13, ¶¶ 25-26.

a letter stating that "Outback Steakhouse is diligent in protecting its proprietary information and aggressive in enforcing its non-competition and confidentiality Agreements."[21] Plaintiff alleges that Mr. Kadow reiterated that position in a telephone call with plaintiff's counsel,[22] resulting in the above-described litigation.[23]

According to the amended complaint, "[a]s a result of the subject non-competition and non-solicitation provisions and Outback's multiple and repeated efforts to enforce them, Plaintiff has been unable to obtain employment in the steakhouse restaurant business, his only area of professional expertise."[24] "[H]e was forced to obtain various temporary jobs for a substantial loss in income, and was on the verge of losing his house."[25] "Only recently did Plaintiff finally obtain a job in the restaurant industry."[26] Plaintiff seeks a variety of damages,[27] and well as costs, legal fees, and interest.[28]

### III.    Louisiana Unfair Trade Practices Act ("LUTPA")

Pursuant to LUTPA, "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice . . . , may bring an action . . . to recover actual damages." La. Rev. Stat. § 51:1409(A). LUTPA does not specifically define which actions constitute unfair or deceptive trade practices, but leaves this determination "to the courts to

---

[21] R. Doc. No. 13, ¶ 29 (emphasis and internal quotation marks omitted).
[22] R. Doc. No. 13, ¶ 30.
[23] See R. Doc. No. 13, ¶¶ 25-35.
[24] R. Doc. No. 13, ¶ 34.
[25] R. Doc. No. 13, ¶ 34.
[26] R. Doc. No. 13, ¶ 35.
[27] Plaintiff asserts that he is entitled to damages "including but not limited to[:] loss of income, loss of business opportunities, impairment of his ability to earn a living, loss of time and convenience, and emotional distress." R. Doc. No. 13, at 15.
[28] R. Doc. No. 13, at 15.

decide on a case-by-case basis." *Chem. Distribs., Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993).

"The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (alteration in original) (internal quotation marks omitted); *see also Chem. Distribs.*, 1 F.3d at 1485. "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Cheramie*, 35 So. 3d at 1060; *see also Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) ("Fraud, misrepresentation, deception, and similar conduct is prohibited; mere negligence is not."). "[T]he range of prohibited practices under LUTPA is extremely narrow [and] LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Cheramie*, 35 So. 3d at 1060 (internal quotation marks omitted) (quoting *Turner*, 989 F.2d at 1422).

In the Court's September 30, 2014 order and reasons, the Court "d[id] not hold that a plaintiff who claims damages from the attempted enforcement of an allegedly invalid noncompetition agreement may never adequately state a LUTPA claim, but only that plaintiff has not done so in his complaint."[29] The Court noted that, "[a]ccording to plaintiff's allegations as stated in the [original] complaint, the only post-termination action taken by defendants was sending the July 13, 2013 letter informing plaintiff that he remained subject to the confidentiality, non-competition and non-solicitation provisions of his Employment Agreement and that defendants would be aggressive in enforcing [their] non-competition and confidentiality

---

[29] R. Doc. No. 12, at 8.

Agreements."[30] The Court disregarded other arguments by plaintiff based on the record of the case because such arguments are "irrelevant for the purposes of [a] Rule 12(b)(6) motion, as the Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted."[31]

The amended complaint further alleges that Mr. Kadow failed to return a telephone call which was made to discuss the validity of the disputed provisions,[32] and that Mr. Kadow maintained Outback's position in another telephone call.[33] Plaintiff also alleges in the amended complaint that Outback acted with the knowledge that the noncompetition and nonsolicitation agreements are invalid and unenforceable under Louisiana law and that plaintiff was prevented from obtaining employment due to the enforcement of those provisions.[34] Plaintiff alleges that "[d]efendants maliciously and intentionally breached their obligation not to enforce the illegal non-competition and non-solicitation provisions"[35] and that such actions constitute a violation of LUTPA.[36]

Defendants assert that "[t]here is nothing fraudulent or deceitful about reminding a former employee that he signed an employment agreement that contains certain provisions that survive the termination of his employment," and that "[t]here is also nothing fraudulent, deceptive, immoral, unethical, oppressive, unscrupulous, or substantially injurious about

---

[30] R. Doc. No. 12, at 7 (internal quotation marks omitted).
[31] R. Doc. No. 12, at 7.
[32] R. Doc. No. 13, ¶ 25.
[33] R. Doc. No. 13, ¶ 30.
[34] R. Doc. No. 13, ¶ 43.
[35] R. Doc. No. 13, ¶ 42.
[36] R. Doc. No. 13, ¶ 45.

advancing legitimate arguments in response to Plaintiff's litigation."[37] Defendants further assert that they "had a good faith belief that the agreement was enforceable."[38]

"A party may threaten to avail itself of any legal right and, in doing so, does not foment undue duress *unless the right is abused or the threat of action [is] made in bad faith*." *Corley v. Se. Metals Mfg. Co.*, No. 10-786, 2011 WL 3665015, at *5 (W.D. La. Aug. 19, 2011) (Trimble, J.) (emphasis added). "Though it may be eventually learned or proven that the threatening party possesses no such legal right, the threat of legal action is still proper unless it is proven that the threatening party lacked a reasonable belief that the [legal right] existed at the time the threat was made." *Id.* (citing *Southmark Props. v. Charles House Corp.*, 742 F.2d 862 (5th Cir. 1984)).

The Court also notes that other courts have stated that enforcement of an illegal noncompetition agreement can form the basis of a LUTPA claim. *See Gearheard v. De Puy Orthopaedics, Inc.*, No. 99-1091, 2000 WL 533352 (E.D. La. Mar. 17, 2000) (Clement, J.); *Landrum v. Bd. of Comm'rs of the Orleans Levee Dist.*, 685 So. 2d 382, 389 n.5 (La. App. 4 Cir. 1996) ("[T]he Supreme Court appears to have recognized that a breach of an employer's 'obligation not to enforce an illegal non-solicitation agreement against its employee' is actionable under this statute [LUTPA].") (citing dicta in *Preis v. Standard Coffee Serv. Co.*, 545 So. 2d 1010, 1013 (La. 1989)).

Plaintiff alleges that Outback acted with the knowledge that the noncompetition agreement is invalid and unenforceable and that plaintiff's livelihood was substantially impacted.[39] Accepting these well-pleaded facts as true and liberally construing all factual allegations in the light most favorable to the plaintiff, plaintiff has stated a plausible claim that

---

[37] R. Doc. No. 17-1, at 8.
[38] R. Doc. No. 17-1, at 8.
[39] R. Doc. No. 13, ¶ 43.

Outback engaged in an "unfair or deceptive method, act, or practice" that caused plaintiff's damages. *See* La. Rev. Stat. § 51:1409(A). Outback's assertion that it acted in good faith is irrelevant for the purpose of evaluating the amended complaint pursuant to Rule 12(b)(6), but Outback will have the opportunity to pursue summary judgment on that basis and/or urge such arguments at trial.[40]

### IV.    Intentional Interference with Business Relations

"Louisiana courts have recognized a cause of action for tortious interference with business." *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981)). "The cause of action for tortious interference with business derives from La. C.C. art. 2315. Tortious interference is based on the principle that the right to influence others not to enter into business relationships with others is not absolute." *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1134 (La. App. 2 Cir. 2011). "Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834, 841 (La. App. 4 Cir. 2002). "Proof of this cause of action has been made more difficult by the imposition of an

---

[40] Although the caption of Outback's motion asserts that it was filed pursuant to Rules 12(b)(1) and 12(b)(6), Outback does not brief Rule 12(b)(1) and its motion is focused almost exclusively on its Rule 12(b)(6) argument. *See* R. Doc. No. 17, at 1. However, Outback includes one sentence regarding LUTPA's prescriptive period: Outback contends that any harm was caused "by the very existence of the non-competition agreement" that was signed in March 2010, so plaintiff's claims are time-barred under a one-year statute of limitations. R. Doc. No. 17-1, at 9; *see* La. Rev. Stat. § 51:1409(E).

Outback's argument misapprehends the nature of plaintiff's claims. Plaintiff alleges that he was harmed by Outback's post-termination actions of threatening to enforce, and maintaining the validity of, its allegedly unenforceable and invalid noncompetition agreement. Plaintiff alleges that he was terminated on May 24, 2013, and the original complaint in this matter was filed on May 22, 2014. *See* R. Doc. No. 1; R. Doc. No. 13, ¶¶ 5-35. Accordingly, all of Outback's post-termination actions fall within LUTPA's one-year prescriptive period.

'actual malice' element of proof on the plaintiff." *St. Landry Homestead Fed. Sav. Bank v. Vidrine*, 118 So. 3d 470, 490 (La. App. 3 Cir. 2013).

"In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the complaint." *Marshall Invs. Corp. v. R.P. Carbone Co.*, No. 05-6486, 2006 WL 2644959, at *5 (E.D. La. Sept. 13, 2006) (Vance, J.) (citing *Dussouy*, 660 F.2d at 602); *see also Mountain States Pipe & Supply Co. v. City of New Roads, Louisiana*, No. 12-2146, 2013 WL 3199724, at *2-3 (E.D. La. June 21, 2013) (Engelhardt, J.). "'Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort.'" *JCD Mktg.*, 812 So. 2d at 841 (quoting George Denegre, Jr., Shannon S. Holtzman, & John A. Lovett, *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 Loy. L. Rev. 395, 401 (1999)). "A plaintiff bringing a claim for tortious interference with business must ultimately show 'by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.'" *Bogues*, 71 So. 3d at 1134-35 (quoting *Junior Money*, 970 F.2d at 10); *accord Henderson v. Bailey Bark Materials*, 116 So. 3d 30, 37 (La. App. 2 Cir. 2013).

Plaintiff's allegations with respect to this count are essentially the same as those regarding the LUTPA count. Plaintiff alleges that "[d]efendants *maliciously* and intentionally breached their obligation not to enforce the illegal non-competition and non-solicitation provisions, which directly interfered with Plaintiff's right and ability to obtain employment and earn a living and with Plaintiff's business relations with potential employers."[41]

---

[41] R. Doc. No. 13, ¶ 39 (emphasis added).

Defendants describe plaintiff's allegations as conclusory and assert that "[t]hese actions were clearly taken to protect the legitimate business interest of Defendants, and Plaintiff has not alleged otherwise."[42] Defendants assert that any conversations with Mr. Kadow are inadmissible settlement discussions pursuant to Rule 408 of the Federal Rules of Evidence, and that its efforts to defend against plaintiff's allegations cannot support plaintiff's claims because this Court granted defendants' motion to dismiss in the first lawsuit.[43]

As stated previously, plaintiff has alleged that defendants acted maliciously.[44] Although defendants assert that they were only protecting their legitimate business interests, plaintiff's allegations that they knew that the noncompetition agreement was invalid, and that their efforts were damaging plaintiff's livelihood, are sufficient to state a plausible claim that defendants' motivations were malicious, rather than legitimate. Defendants' evidentiary argument is irrelevant for the purpose of deciding a Rule 12(b)(6) motion[45]—"[w]hatever difficulty [plaintiff] may have in ultimately proving this claim, now is not the appropriate time to dispose of it." *Marshall Invs.*, 2006 WL 2644959, at *5. Finally, the mere fact that defendants' previous Rule 12 motions were successful does not absolve them of any malicious intent. As stated, the amended complaint alleges that defendants have defended plaintiff's litigation out of malice, despite allegedly knowing the harm that they were causing and the invalidity of the noncompetition agreement. The Court has never addressed the validity of the noncompetition agreement, and defendants have provided no authority to support the proposition that their early motions-practice victories preclude plaintiff's claims. Accordingly, the Court finds that the

---

[42] R. Doc. No. 17-1, at 5.
[43] R. Doc. No. 17-1, at 6.
[44] R. Doc. No. 13, ¶ 39.
[45] Plaintiff notes, "Among other reasons, evidence of settlement negotiations may be admissible to prove the defendant's knowledge and intent and for the purposes of rebuttal." R. Doc. No. 19, at 12.

amended complaint facially states a plausible claim that defendants improperly influenced others not to deal with the plaintiff.

## CONCLUSION

The Court emphasizes that it has no opinion as to the merits of plaintiff's claims or as to the validity and enforceability of the noncompetition agreement. The Court merely holds that plaintiff has overcome the pleading deficiencies that were identified in the Court's September 30, 2014 order. Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, January 23, 2015.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**